KING SON WONG et ux., Relators,

v.

Honorable Jack SMITH et al.,
Respondents.

No. 1378.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

April 14, 1976.

Opinion on Resubmission May 19, 1976.

Jack Edward Love, Houston, for relator.

John P. Forney, Jr., Eastham, Watson,
Dale & Forney, O. W. Bussey, Jr., Thomas
P. Sartwelle, Russell H. McMains, Fulbright
& Jaworski, Houston, for respondent.

CURTISS BROWN, Chief Justice.

This is an original proceeding in which
the relators seek writs of mandamus and
prohibition.

We feel that a detailed examination of
the facts which led to this original proceed-
ing is essential. In 1971 King Son Wong
and Bobbie Joan Wong (relators) were in-
jured in a collision with a truck owned by
the Carnation Company (the Company) and
driven by Ben Johnson. The Wongs subse-
quently filed suit in the district court of
Harris County against Johnson and the
Company. About the time the suit was
filed, the Wongs discharged their former
attorneys, Wilbert K. (Bert) Gripp and Mar-
vin S. (Buddy) King, and retained Homer T.
Bouldin to represent them. Gripp and King
later intervened in the suit, seeking attor-
ney's fees. About the time the trial began,
the intervenors' cause of action was severed
by agreement from the cause in chief. The
Wongs' case was tried in 1973, and the jury

answered the vital liability issues in their favor. However, based on the jury's answers to certain defensive special issues, the court entered judgment for the Wongs for an amount less than their damages found by the jury. On appeal to this court, we reversed the judgment of the trial court and rendered judgment for the Wongs for the full amount of their damages. See *Wong v. Carnation Co.*, 509 S.W.2d 385 (Tex.Civ.App.—Houston [14th Dist.]), *writ ref'd n. r. e.*, 516 S.W.2d 116 (Tex.Sup.1974). An application for writ of error was refused by the supreme court in accordance with a per curiam opinion, and we issued a mandate to the trial court.

Shortly after the mandate was received, Johnson and the Company filed in the trial court a "Motion for Instructions on Payment of the Judgment," asking to whom the judgment should be paid. Although at the hearing on the motion the court apparently instructed Johnson and the Company to pay the judgment in strict accordance with its terms, no written order was entered at that time. A short time later the Wongs' attorney, Bouldin, died. The Wongs subsequently retained their present attorney, Jack Edward Love.

At this point Johnson and the Company filed a bill of interpleader in the Harris County district court and tendered to the District Clerk the full amount of the Wongs' judgment against them plus interest to that date. Named as defendants were the Wongs, the Wongs' attorney, Love, the Wongs' former attorneys Gripp and King, the attorney representing Gripp and King in the severed case, William O. Bussey, Jr., and the independent executrix of the estate of the Wongs' former attorney Bouldin, Mrs. Virginia Bouldin. Ultimately Love, Bussey, and Bouldin disclaimed in that suit, leaving as defendants only the Wongs and the former intervenors, Gripp and King.

Shortly after the filing of the interpleader suit, the Wongs' attorney moved the court in the original case to enter a written order in response to the "Motion for Instructions on Payment of the Judgment"

and at the same time requested the District Clerk to prepare and issue a writ of execution on the judgment. Execution did issue, and the Sheriff of Harris County levied on lands belonging to the Company.

The interpleader suit was subsequently assigned to the same court in which the original case had been tried: the 189th District Court, Honorable Jack Smith presiding. Judge Smith, acting in the original case, signed an order instructing Johnson and the Company

"to pay the entire amount of the judgment rendered herein by the 14th Court of Civil Appeals and approved finally by the Supreme Court of Texas to the persons, and only to the persons, designated therein; to wit: KING SON WONG and BOBBIE JOAN WONG. . . ."

However, having learned that the Wongs were proceeding with execution on the judgment, Judge Smith appended to the order the following words:

"and it appearing to the court that after the above hearing but prior to entry of this judgment such funds have been paid into the registry of the court no execution shall issue."

After this order was signed, the Company received notice of an upcoming Sheriff's sale of their property, which sale was pursuant to the previously issued writ of execution. Johnson and the Company thereupon filed, under the docket numbers of both the original suit and the interpleader suit, a motion to quash the Sheriff's sale. Judge Smith granted this motion, quashing the Sheriff's sale, the levy, and the writ of execution, and ordered that "all proceedings to levy execution on any judgment in Cause No. 850,969 [the original suit] shall be and are hereby terminated and quashed. . . ."

Johnson and the Company thereafter moved for discharge from the interpleader suit and for the recovery of costs, expenses, and attorney's fees. Judge Smith denied the recovery of costs, expenses, and attorney's fees, but did order that Johnson and the Company be discharged from the suit.

It is in this posture that the Wongs, as relators, filed this original proceeding asking this court to issue these writs prohibiting Judge Smith and all of the remaining parties from taking any further action designed to frustrate relators' attempts to obtain execution of their judgment in the original suit. It is our opinion that such writs are called for in this case.

The rule in Texas is that "a bill of interpleader comes too late when application therefor is delayed until after judgment has been rendered in favor of one of the claimants of the fund, and this is especially true where the holder of the fund had notice of the conflicting claims prior to the rendition of such judgment and an opportunity to implead the adverse claimants in the suit in which such judgment was rendered."

United Producers' Pipe Line Co. v. Britton, 264 S.W. 576, 578 (Tex.Civ.App.—El Paso 1924, writ ref'd).

Accord, Farmers State Bank of Meridian v. National Fire Ins. Co., 169 S.W.2d 545 (Tex. Civ.App.—Waco 1943, no writ); Nash v. McCallum, 74 S.W.2d 1046 (Tex.Civ.App.— El Paso 1934, no writ). See also Annot., 108 A.L.R. 267, 275–76 (1937); 48 C.J.S. Interpleader § 23 at 70 (1947).

We feel that the above rule controls the instant case. Johnson and the Company waited to file their interpleader until after the judgment against them had become final, thus rendering them independently liable to relators. Not only did Johnson and the Company know of other possible claims against relators without joining the potential claimants as parties to the original suit, they agreed to sever the intervention action of two of the claimants from the main case. In such a situation it is manifest that the equitable remedy of interpleader should not be available.

Our judgment in the original suit recited the following:

"It is ordered, adjudged and decreed by the Court that plaintiff, King Son Wong, do have and recover of and from defendants, Carnation Company and Ben John-

son, the sum of . . ., for which let execution issue.

"It is further ordered, adjudged and decreed by the Court that plaintiff, Bobbie Joan Wong, do have and recover of and from defendants, Carnation Company and Ben Johnson, the sum of . . ., for which let execution issue."

The actions of Judge Smith in preventing execution of our judgment and in entertaining the interpleader suit are an interference with the jurisdiction of this court. See Nash v. McCallum, supra. We may issue any writ necessary to protect our jurisdiction. Tex.Rev.Civ.Stat.Ann. art. 1823 (1964).

The Honorable Jack Smith, Judge of the 189th District Court, is ordered to vacate his orders quashing the Sheriff's sale, the levy, and the writ of execution, and prohibiting execution of the judgment in Cause No. 850,969, and he is prohibited from taking any further action which will interfere with the enforcement and collection of the judgment in that case.

Writs of mandamus and prohibition ordered issued.

## ON RESUBMISSION

By way of a motion to vacate or in the alternative for rehearing, respondent Judge Jack Smith has alleged that before the rendition of our former judgment in this cause on April 14, 1976 he received no notice of the pendency before this court of relators' petition for writs of mandamus and prohibition. We will assume that Judge Smith received neither our letter of January 16, 1976 nor the brief of respondents Ben Johnson and the Carnation Company, mailed to him on April 2, 1976 by counsel for respondents. On the basis of the supreme court's holding in Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063 (1926), we ordered the cause resubmitted and have now heard argument from all interested parties, including Judge Smith. An extensive statement of the facts of this case is contained in our initial opinion, and therefore we will not repeat them here.

■ Judge Smith's sole remaining contention is that our decision in this case should be controlled by an agreement entered into at a pre-trial conference. He states that

"it was agreed by all parties, through their attorneys of record, that the intervention would be severed, and if the Wongs prevailed and secured a judgment against defendants, a disposition of the intervention suit would be made before any disbursement of the proceeds of any judgment was made to any of the parties. This agreement was made in open Court and was subsequently reduced to writing by dictating the agreement and stipulation to the court reporter in my chambers."

Judge Smith also says that no one ever requested that the agreement be transcribed from the court reporter's shorthand, and that his notes have, unfortunately, been destroyed.

When judgment was rendered in the principal cause the judgment prepared by the attorneys for the Carnation Company and Johnson did not include any reference to any agreement that it would not be enforceable as any other final judgment. On the contrary, it appeared in every way to be a valid and enforceable final judgment. When the original cause was appealed to this court no mention or claim was made by anyone that such agreement existed. Had such agreement been brought to our attention a question would have been presented as to whether the judgment was final and appealable. Our judgment, reciting that execution should issue, was duly rendered and furnished to all parties. No contention was made on motion for rehearing or on any occasion that an agreement existed which impaired the enforceability of our judgment. Application for writ of error was made to the Supreme Court of Texas without any claim that any such agreement existed. Following refusal of the application by the supreme court for "no reversible error" by per curiam opinion, 516 S.W.2d 116 (Tex.Sup.1974), our mandate duly issued. No such agreement was called to our attention at that time, nor motion made to modify or recall our mandate.

The defendants in the original cause, Carnation Company and Johnson, filed a "Motion Requesting Instructions on Payment of the Judgment." No claim was made in such motion of any agreement that would affect the enforceability of the judgment. The trial court initially ordered the judgment to be enforced in accordance with its terms without making any notation or claim of a contract impairing the enforceability of the final judgment. A bill of interpleader was filed by Carnation Company and Johnson without any allegation of the existence of such agreement. The court ordered the execution quashed. In so doing the court made no finding or any mention whatsoever of such agreement. On the original submission of this original proceeding all parties (except Judge Smith) appeared and fully argued this matter and never made any claim that such agreement existed or that our judgment was impaired by any outstanding contractual agreement between the parties.

It is untimely to ask the court to enforce this agreement at this late date. It is not necessary to consider the effect of Tex.R. Civ.P. 11. Our judgment has long since become final and its terms are quite specific. Our mandate has issued in accordance with law. Were we now to undertake to enforce such an agreement we would do damage to the finality of all judgments.

In *Southern Pacific Transportation Co. v. Stoot*, 530 S.W.2d 930 (Tex.Sup.1975), it was well said:

"Delay haunts the administration of justice. It postpones the rectification of wrong and the vindication of the unjustly accused. It crowds the dockets of the courts, increasing the costs for all litigants, pressuring judges to take short cuts, interfering with the prompt and deliberate disposition of those causes in which all parties are diligent and prepared for trial, and overhanging the entire process with the pall of disorganization and insolubility." *Id.* at 931.

It being too late to raise the matter of the agreement at this time, we, for the reasons stated above and in our initial opinion, order writs of mandamus and prohibition issued.